Paul Urich (FL Bar no. 88780)
support@elevatelegalsolutions.com
ELEVATE LEGAL SOLUTIONS PLLC
7901 4th Street N, Suite 300
St Petersburg, FL 33702
Telephone: (800) 320-3698

*Counsel for Plaintiff*
And those similarly situated

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORANGE DIVISION**

| | | |
|---|---|---|
| **JONATHAN WILSMAN,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br>**BETTER RISE CAPITAL LLC** a California Limited Liability Company<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br><br>[Title] |

Plaintiff Jonathan Wilsman ("Plaintiff"), by his undersigned counsel, for this class action complaint against BETTER RISE CAPITAL LLC ("BRC"), alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## I. INTRODUCTION

1. Nature of Action. Plaintiff, individually as a class representative for all others similarly situated, brings this action against BRC for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA")

2. This case involves a campaign by BRC that employs the use of pre-recorded ringless voicemails to market its services through the use of telemarketing calls to individuals without obtaining prior express written consent.

3. Plaintiff also alleges that BRC uses automated systems to make telemarketing calls to Florida residents, and that by doing so, BRC has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

4. The recipients of BRC's illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA, and because the technology used by BRC makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## II. PARTIES

5. Plaintiff Jonathan Wilsman is, and at all times mentioned herein was, an individual citizen of the state of Florida and this District.

6. Defendant BRC is a limited liability company with its principal place of business in California and can be served via its registered agent Nima Asadi Esq at 19200 Von Karman Ave, Suite 600, Irvine, CA 92612.

## III. JURISDICTION AND VENUE

7. Jurisdiction. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. The Court has supplemental jurisdiction over the Florida Telephone Solicitations Act claims, as they arise out of the same telemarketing campaign as the TCPA claims.

8. Personal Jurisdiction. This Court has specific personal jurisdiction over BRC because the company makes telemarketing calls into this District.

9. Venue. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the telephone calls at issue were to this District and Plaintiff resides here.

## IV. TCPA BACKGROUND

ATDS/Pre-Recorded Voice.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of

<u>The National Do Not Call Registry.</u>

14. The National Do Not Call Registry ("NDNCR") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227 (c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The Florida Telephone Solicitations Act.</u>

17. The Florida Telephone Solicitations Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

19. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

20. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## V. FACTUAL ALLEGATIONS

21. Defendant BRC offers merchant cash advance loans ("MCA loans") to businesses.

22. One of BRC's marketing strategies for marketing its MCA loans and generating new customers is telemarketing.

23. BRC's telemarketing campaign employs the use of pre-recorded messages by the source of ringless voicemails.

24. Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

25. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26. Defendant BRC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

<u>Calls to Plaintiff</u>

27. Plaintiff's telephone number XXX-871-XXXX is a non-commercial telephone number not associated with any business.

28. Plaintiff's phone number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

29. Plaintiff's phone number is a Florida number and is therefore also on Florida's "no sales solicitation calls" list.

30. Plaintiff's phone number is Plaintiff's one and only number that he uses for personal, residential, and household reasons.

31. At no point has Plaintiff sought or solicited information regarding Defendant BRC's MCA loans.

32. Despite this, Plaintiff received ringless voicemails on at least July 22, July 25, August 5, and August 6 of the year 2025 from Defendant ("alleged calls").

33. Ringless voicemails employ the use of an artificial or pre-recorded voice and are in violation of the TCPA as per the FCC and require prior express written consent from the recipient.

34. Each of the ringless voicemails in the alleged calls were all slightly different and almost identical.

35. The call back number left in the ringless voicemails were either 833-727-4098 or 833-727-6090.

36. An example of one of the ringless voicemails was as follows,

> "I left a voicemail and even sent a text of the middle last week but I haven't been able to get in touch if you have a moment right now press two to connect with me or someone from underwriting directly I've been reviewing your file and it's right at the final stage for approval we just need to confirm a couple of quick details to finalize this but just a heads up rates are changing daily and your approval is about to expire if you're ready to move forward press two now to connect with underwriting or give me a call back when you have a moment at 833-727-4098 and ask for me or anyone in the underwriting team.

37. The dialog, cadence, and voice inflections in each of the ringless voicemails was identical, evidencing a prerecorded voice.

38. Defendant failed to include their true identity in the ringless voicemails and spoofed the Caller IDs on each of the alleged calls made to Plaintiff.

39. On August 19, 2025, Plaintiff investigated both call back numbers left in the alleged calls 833-727-4098 and 833-727-6090 as it was the only way to identify who was sending pre-recorded messages to his phone.

40. Both numbers 833-727-4098 and 833-727-6090 led to Plaintiff being connected to Defendant BRC.

41. An agent by the name of Gustavo Pardo ("Pardo") who is a business development representative with Defendant BRC, solicited Plaintiff for an MCA loan on behalf of Defendant.

42. Plaintiff received an email from Pardo requesting the required documents for an MCA loan with Defendant BRC. *See Exhibit A*.

43. Defendant violates the TCPA as a matter of routine for financial gain.

44. Upon information and belief, Defendant BRC's telemarketing campaign has reached hundreds of thousands of consumers residential phone numbers throughout the United States.

45. Upon information and belief, Plaintiff has received additional ringless voicemails from Defendant BRC since January 2025 that are unknown to Plaintiff at this time and will be revealed through Defendant's call records.

46. The alleged calls were made to Plaintiff for the sole purpose of encouraging the sign-up for Defendant BRC's MCA loans.

47. Plaintiff did not provide his prior express written consent to receive any of the alleged calls.

48. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network

bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## VI. CLASS ACTION ALLEGATIONS

49. Class Definition. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of Class (the "Classes") defined as follows:

**TCPA Pre-Record Class:** All Persons to whom: (a) either Defendant and/or a third party acting on Defendant's behalf made one or more non-emergency telephone calls; (b) to their cellular telephone numbers; (c) through the use of an artificial or prerecorded voice; (d) for the purpose of promoting Defendant's goods or services; (e) at any time in the last four years through the date of trial.

**Florida's Telephone Solicitation Act Autodial Class:** All Persons to whom: (a) received a telephonic sales call regarding Defendant's goods and/or services (b) using the same equipment or type of equipment utilized to call Plaintiff (e) at any time in the last four years through the date of trial.

50. Numerosity. The Classes are so numerous that joinder of all its members is impracticable. On information and belief and on the basis of the *en masse* calling practices at issue, the Classes have at least hundreds of members.

51. Commonality. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant BRC utilized a pre-recorded voice;

b. Whether the calls promoted Defendant BRC's products and/or services;

c. Whether Defendant BRC's conduct was willful or knowing such that damages should be trebled.

52. Typicality. Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims and those of the Classes arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

53. Adequacy. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable counsel with experience in TCPA and consumer class action litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Classes.

54. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and members of the Classes. The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important and desirable advantages, including judicial economy.

55. Superiority. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violations of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are all automated and because the TCPA articulates bright-line standards for liability and damages.

56. Injunctive and Declaratory Relief is Appropriate. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class wide basis.

## VII. FIRST CLAIM FOR RELIEF
**Violations of the Telephone Consumer Protection Act, 47 U.S.C. §**

**227(b)(1)(A))**
**On Behalf of Plaintiff and the Pre-record Class**

57. Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 57.

58. The foregoing acts and omissions of Defendant and/or its agents or affiliates, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Class using an artificial or prerecorded voice.

59. As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant and/or its agents or affiliates, Plaintiff and members of the Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its agents or affiliates from violating the TCPA, 47 U.S.C. § 227 (b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice.

61. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227 (b)(1)(A), by Defendant and/or its agents or affiliates, Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227 (b)(3).

## VIII. SECOND CLAIM FOR RELIEF

**Violations of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

62. Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 62.

63. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act National Autodial Class Members against Defendant.

64. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

65. A "telephonic sales call" is defined as a "telephone call. Text message, or voicemail transmission to a customer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

66. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

67. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

68. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

69. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in

damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. Injunctive relief prohibiting the Defendant and/or its affiliates, agents, and/or other persons or entities acting on the Defendant's behalf from using artificial or pre-recorded voices to contact cell phones and other protected lines, absent an emergency circumstance, in the future;

E. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and FTSA and $1,500 for each knowing or willful violation;

F. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

G. Such further relief as the Court deems just and proper.

## X. DEMAND FOR JURY

Plaintiff demands a trial by jury of all claims that can be so tried.

Dated: September 25, 2025,

Respectfully submitted,

/s/ Paul Urich

Paul Urich (FL Bar no. 88780)
support@elevatelegalsolutions.com
ELEVATE LEGAL SOLUTIONS PLLC
7901 4th Street N, Suite 300
St Petersburg, FL 33702
Telephone: (800) 320-3698

*Counsel for Plaintiff and the Putative Class*